**PROVIDENT LAW**

Christopher J. Charles, SBN 023148
Edwin G. Anderson IV, SBN 027292
Eric L. Walberg, SBN 015344
PROVIDENT LAW ®, PLLC
14646 N. Kierland Blvd., Suite 260
Scottsdale, Arizona  85254
Telephone: (480) 388-3343
fileclerk@providentlawyers.com
*Attorneys for Plaintiff Gerrie A. Cooley*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gerrie A. Cooley, a married woman; Camptown of Show Low, LLC, an Arizona Limited Liability Company, | Case No.: 3:15-cv-08145-DLR |
| Plaintiff, | **FIRST AMENDED VERIFIED COMPLAINT** |
| vs. | **(REQUEST FOR JURY TRIAL)** |
| Eileen Davison, Michael Davison and Robert Davison, as Co-Trustees of The James E. Davison Revocable Trust Dated March 26, 2003; Eileen Davison, an Individual; Darleen Davison, an Individual; Robert Davison, an Individual; Michael Davison, an individual; John Does and Jane Does I-X; White Partnerships I-X; Black Corporations I-X; and Red Limited Liability Companies I-X, | |
| Defendants. | |

Plaintiffs Gerrie A. Cooley and Camptown of Show Low, LLC, allege:

/ / / /

/ / / /

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff is Gerrie A. Cooley ("Ms. Cooley"), who resides in Escondido, California.

2. Plaintiff Camptown of Show Low, LLC is an Arizona Limited Liability Company whose sole member and manager is Gerrie A. Cooley, a resident of California (hereinafter "Camptown").

3. Eileen Davison, Michael Davison and Robert Davison serve as co-trustees of the James E. Davison Revocable Trust Dated March 26, 2003 (hereinafter the "Trust").

4. Defendant Eileen Davison ("Ms. Davison"), an individual, is an Arizona resident, who resides in the Show Low, Arizona, whose mailing address is P.O. Box 1478 Show Low, AZ 85901.

5. Defendant Darleen Davison is an Arizona resident, who resides at 920 Billy Creek Road, Lakeside, Arizona 85929.

6. Defendant Robert Davison is an Arizona Resident, who resides at 1400 North 22nd Drive, Show Low, Arizona 85901.

7. Defendant Michael Davison is an Arizona Resident, who resides in Show Low, Arizona.

8. The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332.

9. This Court has jurisdiction in diversity because Plaintiffs Gerrie Cooley and Camptown are residents of California and all named Defendants are residents of Arizona.

## GENERAL ALLEGATIONS

### A. The Trust Contracts with Ms. Cooley to Sell the Camptown Mobile Home Park

10. The subject property is located at 1221, 1241, 1251, and 1260 West McNeil, Show

Low, Arizona 85901. The parcel numbers are: APN 210-07-054; 210-08-031 A, B, and C; 210-08-030; 210-08-032; 210-06-059 (collectively, the "Property"). The Property is a mobile home park with 97 units called "Camptown."

11. At all times relevant to this Complaint, prior to the subject purchase and sale transaction with Ms. Cooley, the Trust owned Camptown.

12. On June 3, 2014, Ms. Cooley contacted Ms. Davison and inquired whether Camptown was for sale.

13. Ms. Davison referred Ms. Cooley to her father, the late James E. Davison regarding whether he may be interested in selling Camptown.

14. Ms. Cooley contacted Mr. Davison on June 3, 2014 and he described Camptown as a 55+ all-adult park with slightly under 100 trailers. He said the Property was well-maintained. Ms. Cooley explained that she was looking for an investment, would not be moving to Show Low and any investment would be run through California.

15. In that June 3rd conversation, Mr. Davison indicated that he would sell the park for $2.5 million and that Camptown generated about $400,000 in annual income. He also represented that the Property was well-maintained and free of deferred maintenance.

16. Ms. Cooley informed Mr. Davison that, in order for her to consider the investment, she needed to see financial information on Camptown dating back three (3) years. Mr. Davison assured her that this information was available.

17. Ms. Cooley then traveled from California to visit the Property and meet with Mr. Davison and Eileen Davison on June 6th and 7th, 2014, anticipating that she would receive the financial information.

18. Mr. Davison did not produce the financial information.

19. On June 7, 2014, Mr. Davison wrote out a handwritten offer, attached hereto as

**Exhibit A** (the "Offer").

20. When referring to Mr. Davison, individually throughout this complaint, liability for his actions are imputed to the Trust.

21. Initially Mr. Davison stated that he would sell Camptown for $2.5 million; however, he later increased the price to $3.2 million.

22. Mr. Davison stated that "the sale of Camptown included everything and that he would take nothing away." The sale of Camptown included the Property, personal property, good will, lease agreements, promissory notes, titles and all legal interests in regard to Camptown (collectively referred to as the "Assets.").

23. The Parties agreed that Ms. Cooley would purchase the Assets related to Camptown for a purchase price of $3.5 million (the "Purchase Contract"). Also included in the Purchase Contract was Mr. Davison's agreement to mentor Ms. Cooley in managing and operating Camptown and with Mr. Davison's daughter, Eileen Davison, to remain as manager on an independent contractor basis (the "Management Business.").

24. Mr. Davison also agreed to convey the following real and personal property:  97 spaces, including but not limited to: nine (9) rented units, eight (8) units for sale that would generate $109,000.00 once sold, 53 spaces owned at $400.00 per unit, 26 seasonal units and one vacant lot. Also included was 25 carryback units wherein Ms. Cooley would be the lender, and a duplex apartment for a total of $551,400.00 and all personal property located on the Property.

25.  Despite requests for the last three years of financial information on Camptown, Mr. Davison and the Trust failed and refused to supply.

26. Camptown of Show Low, LLC is the entity that oversees daily operations and conducts business on behalf of the residents.

27. The seller of the Property was the Trust.

28. Throughout the transaction, Defendant Eileen Davison expressly represented to Ms. Cooley that she also owned the Property.

29. Pursuant to the terms of the Purchase Contract, the purchase price originally discussed for the Property was $3,500,000.

30. On or about July 24, 2015, Ms. Cooley deposited earnest money in the amount of $5,000, with Lawyers Title in Show Low, Arizona.

31. Further, pursuant to the Purchase Contract, Ms. Cooley agreed to provide the Trust with a cash payment of $745,000 at close of escrow.

32. The Trust agreed to provide a seller carryback loan in the amount of $2,750,000.

33. Under the Purchase Contract, the parties agreed that Ms. Cooley would receive from the Trust the Assets and Management Business.

34. At the time of the Purchase Contract in June 2014, the Management Business owned and leased 35 mobile home trailers to its tenants on the Property. As such, the parties agreed in the Purchase Contract that Ms. Cooley would receive from Mr. Davison all the Assets and existing assets and contracts of the Management Business, which was all 35 mobile home trailers and their lease agreements with tenants.

35. The parties subsequently drafted Escrow Instructions dated July 24, 2014 and executed written amended Escrow Instructions on August 26, 2014, and further executed a Deed of Trust dated August 26, 2014, Affidavit of Property Value dated August 26, 2014, Amended Final Combined Closing Statement dated August 26, 2014, and Promissory Note dated August 26, 2014.  These documents are collectively attached at **Exhibit "B."**

36. Close of escrow occurred on or about August 26, 2014.

5

**B.  Mr. Davison and Ms. Davison Misrepresent the Condition of the Property**

37. Throughout the transaction and prior to close of escrow, Mr. Davison and Eileen  Davison expressly represented to Ms. Cooley that the Assets and Management Business included over 97 tenants paying $400 per month. According to the Purchase Contract, Mr. Davison and Ms. Davison represented that Ms. Cooley would receive the Assets and the Management Business, a business that held 35 mobile home trailers mobile home trailers subject to agreements for sale secured by promissory notes payable to Camptown.

38. Mr. Davison specifically told Ms. Cooley that she would receive at close of escrow all proceeds from the sale of the eight available units. And Mr. Davison and Eileen Davison represented orally, through the Purchase Contract, and through the attached rent rolls to the Escrow Instructions that the Property generated approximately $551,400 per year or $45,950.67 per month in revenue.

39. Mr. Davison and Eileen Davison represented that after expenses, the Property and Management Business was producing, and would produce for Ms. Cooley, at least $110,000 in net income in the first year.

40. After close of escrow, Ms. Cooley discovered that Camptown did not and was not capable of producing revenue of $551,400 per year or $45,950.67 per month. Additionally, the tenants' leases were for $375 per month, not $400 per month as represented.

41. Throughout the transaction and prior to close of escrow, Defendant Eileen Davison substantially assisted Mr. Davison in providing this false information.

42. Throughout the transaction and prior to close of escrow, Mr. Davison, and Eileen Davison represented to Ms. Cooley that, after the Property was sold to Ms. Cooley, both he and Ms. Davison would stay involved and help Ms. Cooley manage and run

6

the Assets and Management Business. Specifically, as part of the purchase price, Mr. Davison agreed to help mentor Ms. Cooley in regard to mobile home park management and agreed to continue to work for Ms. Cooley, such that Ms. Cooley was purchasing a "turn-key" business. Ms. Davison was to stay on as manager to assist with running the operations.

43. This representation was false, and James Davison had no intention of performing those obligations when he made this representation. Eileen Davison substantially assisted or encouraged James Davison in providing this false information.

44. Mr. Davison and Eileen Davison knew that Ms. Cooley had no prior experience operating a mobile home park, and so, this representation was material and specifically negotiated by the parties.

45. Ms. Cooley paid Eileen Davison $3,000 per month to help Ms. Cooley manage the Property and Management Business, when the going rate for such services ranges from $1,500 to $2,000 per month. Eileen Davison also received $1,000 commission from the units she sold.

46. Eileen Davison and Ms. Cooley mutually agreed that Ms. Davison's position would be terminated on June 8th, 2014.  Eileen Davison told all the tenants on June 2nd that she was retiring but failed to notify Ms. Cooley, who learned this information from the tenants. Ms. Cooley met with Eileen Davison face-to-face on June 8th, and Eileen Davison said she can either, "go through the motions until June 15th or we can make today the last day." Ms. Cooley asked Eileen Davison to type up a summary of the operations to help train the next manager and Eileen Davison refused, and so June 8th was Eileen Davison's last day.

47. Eileen Davison wanted to own Camptown, and so, she purposefully obstructed Ms.

Cooley's operations of the Property and the Management Business, such that Ms. Cooley would default on her obligations and the Property and Management Business would be foreclosed upon by James Davison, and later inherited by Eileen Davison. Although she was hired to look out for Ms. Cooley's best interest and help with management, Eileen Davison enabled James Davison to convert property and monies belonging to Ms. Cooley, including rents owed to Ms. Cooley that Eileen Davison misappropriated on behalf of James Davison.

48. Throughout the transaction and prior to close of escrow, James Davison and Eileen Davison gave Ms. Cooley erroneous infrastructure and utility maps and information. For example, the lighting and associated electrical systems on the Property were not properly identified on the utility maps. Eileen Davison substantially assisted or encouraged James Davison in providing this false information. After the close of escrow, Ms. Cooley discovered the false information.

49. Throughout the transaction and prior to close of escrow, James Davison told Ms. Cooley that, as part of the sale, he would convey to Ms. Cooley 20 to 30 promissory notes that he held from the Property's tenants in the favor of Camptown. James Davison represented that those promissory notes yielded profit of at least $7,000 per month.

50. Eileen Davison substantially assisted or encouraged James Davison in providing this false information. Those representations were false, and the promissory notes do not yield profit of $7,000 per month. Rather, they provide a profit of $2,000 per month.

51. Throughout the transaction and prior to close of escrow, James Davison gave Ms. Cooley a false amortization schedule in connection with the promissory notes. Specifically, Mr. Davison intentionally applied the first monthly payment to the note

8

on the day the loan closed, instead of the following month. Eileen Davison substantially assisted or encouraged James Davison in providing this false information. This misrepresentation has caused Ms. Cooley to sustain damages of at least $8,000, as Ms. Cooley had to credit certain tenants with principal payments to properly amortize their notes. Ms. Cooley discovered the discrepancy in the amortization schedules in October 2014, as tenants were complaining that their payments were not applied correctly. When Ms. Cooley brought this to Eileen's attention, Eileen responded that "tenants are stupid" and that there was no problem.

52. James Davison and Eileen Davison represented to Ms. Cooley that the Property included three vacant lots that could add another 15 rentable spaces to the Property. They further represented that it would only cost $75,000 for them to develop the 15 additional spaces.

53. Following close of escrow, Ms. Cooley discovered that it would actually cost $425,000 to develop the three vacant lots, and Eileen Davison knew the cost because she had obtained an estimate to do the work.

54. James Davison and Eileen Davison did not allow Ms. Cooley to conduct any inspection or appraisal of the Property or Management Business prior to close of escrow.

### C. The Trust, Darlene Davison, Robert Davison and Eileen Davison Have Failed to Convey All Agreed Upon Assets to Ms. Cooley

55. The Trust sold to Ms. Cooley all of the Assets related to Camptown.  Those included but are not limited to:

    a.  Ten (10) mobile home trailers, the corresponding promissory note or title or deposit was not conveyed to Ms. Cooley, these were identified in the Purchase Contract — specifically, those trailers in spaces 3, 80 (Notes) 81, 60, 49  (titles), 33, 70, 79, and

letter "O" (deposits). These numbers may change upon further discovery.

  b.  All of the personal property and equipment that was on the Property at the time of contract, including but not limited to a truck being driven by Robert Davison, tools and equipment taken from the Property and sold by Eileen Davison without Plaintiff's permission, a snow blower taken from the property and being used by Robert Davison; and

  c.  The Management Business.

56. The Management Business that Mr. Davison actually conveyed to Ms. Cooley is worth at least $195,000 less than Mr. Davison represented and stated in the Purchase Contract.

57. And the value of the Property is worth $220,000 less than represented, based on the income approach to real property valuation.

58. Mr. Davison, through the Trust and Ms. Davison only intended to deliver 25 mobile home trailers.

59. In sum, Mr. Davison's, the Trust's and Ms. Davison's misrepresentations about the Property, Assets and Management Business amount to at least a $415,000 decrease in value to the assets actually received by Ms. Cooley.

60. According to the Purchase Contract, Mr. Davison agreed to provide Ms. Cooley with certain rents and note payments in connection with the tenants at the Property as of September 1, 2014.

61. The Trust has withheld $12,000 in rents and note payments that are due to Ms. Cooley that were generated in August 2014.

62. According to the Purchase Contract, Ms. Cooley was entitled to receive from James Davison certain security deposits and key deposits in connection with the tenants on

the Property.

63. The Trust has withheld certain security deposits and all key deposits owed to Ms. Cooley.

64. According to the Purchase Contract, Ms. Cooley was entitled to receive from the Trust all of the leases in connection with the tenants at the Property.

65. The Trust has withheld all current leases owed to Ms. Cooley.

66. Further, upon information and belief, Eileen Davison improperly notarized the conveyance documents between the tenants and the Management Business for units sold to the tenants. Ms. Davison did not witness the signatures of the tenants and failed to record her notarizations in any notary log, in violation of Arizona law.

**C. The Trust, Michael Davison and Eileen Davison Convert Ms. Cooley's Property and Monies**

67. In October 2014, without Ms. Cooley's knowledge or consent, James Davison removed roof awning inventory located at the Property after the close of escrow.

68. James Davison told Ms. Cooley in June 2015 that he had ordered employees of the Property to take a trailer and remove awning inventory to be used at James Davison's personal residence. Camptown employees confirmed to Ms. Cooley in July 2015 that Mr. Davison had indeed taken the roof awning inventory to his residence.

69. Eileen Davison misappropriated rents from tenants and distributed them to James Davison or the Trust, and those rents were due and owing to Ms. Cooley, not Defendants.

70. In September 2014, without Ms. Cooley's knowledge or consent, Ms. Davison and her friend named Ann, had a garage sale at Camptown in which she sold items from the Billiard Room and Office. After the sale was over Mr. Mitch Russell took two

11

truckloads to Ms. Davison's home for another sale. Before Ms. Cooley arrived on October 5, 2014, Ms. Davison had Mitch Russell remove boxes of tools to a shed at space #75 and four (4) boxes of files to her personal residence. Mr. Russell also removed from Camptown a large table for use at the garage sale. In June 2015, Bob Davison confirmed the tables were missing.

71. On or about October 9, 2014 Ms. Davison showed Ms. Cooley the office and storage rooms and the rooms were empty.  When asked where the personal property that was in those locations prior to the close of escrow, Ms. Davison first stated that the tools were her father's and they were delivered to his home.  When asked again, Ms. Davison changed her story and stated that Camptown has no tools and all of the contractors provide their own tools.

## COUNT 1: FRAUD

**(Against Defendants Eileen Davison, Robert Davison and Michael Davison as Co-Trustees of the James E. Davison Revocable Trust Dated March 26, 2003, the Trust and Defendant Eileen Davison)**

72. Ms. Cooley incorporates each paragraph of this Complaint into this cause of action.

73. James Davison, on behalf of the Trust, made certain representations to Ms. Cooley in connection with the sale of the Property, the Assets and the Management Business. For example, he told Ms. Cooley that there were 97 tenants paying $400 per month at the Property.

74. And he attached rent rolls to the Escrow Instructions.

75. Mr. Davison represented that the Property produced $551,400 per year or $45,950.67 per month in income, as he wrote in the Purchase Contract.

76. He also represented that the Management Business provided profit of at least $109,000

per year.

77. He further told Ms. Cooley that he and Eileen Davison would stay involved after the sale and help Ms. Cooley manage and run the Management Business.

78. He further made representations as to the infrastructure and utilities concerning the Property.

79. He stated also that the Property had no deferred maintenance issues. He further stated that he had already purchased two garage doors for the apartments that would be installed at a cost of $5,000 which were never installed or purchased.

80. Additionally, he told Ms. Cooley that he would convey as part of the sale 20 to 30 promissory notes that he held from the Property's tenants — and represented that those promissory notes yielded profit of at least $7,000 per month.

81. He made representations that the amortization schedule he provided in connection with the promissory notes was true and correct.

82. He further represented that the Management Business to be conveyed to Ms. Cooley held 35 mobile home trailers and that no assets of the Management Business would be sold prior to the close of escrow.

83. James Davison's representations were false.

84. Despite what he represented as the rent rolls, the Property cannot generate $551,400 per year or $45,950.67 per month, and the tenants' leases were only for $375 per month. In fact, the Property has never achieved the level of profitability that Mr. Davison and Ms. Davison had represented.

85. Further, Mr. Davison failed to convey ten (10) mobile home trailers, the corresponding promissory notes, or deposits to Ms. Cooley that were identified in the Purchase Contract. Specifically, on ten (10) mobile home trailers, the corresponding promissory

note or title or deposit was not conveyed to Ms. Cooley, these were identified in the Purchase Contract — specifically, those trailers in spaces 3, 80 (notes) 81, 60, 49 (titles), 33, 70, 79, and letter "O" (deposits).

86. Eileen Davison substantially assisted or encouraged James Davison in providing this false information.

87. Further, Eileen Davison had no intention of performing his obligations to continue to help Ms. Cooley manage the Property when she and her father made representations to that effect.

88. And the infrastructure and utility maps and information that James Davison gave to Ms. Cooley was erroneous. Ms. Davison knew that information was erroneous but she and the Trust still presented it to justify their sale of the Property with no infrastructure problems and no deferred maintenance.

89. Additionally, the promissory notes do not yield $7,000 per month, as represented.

90. And the amortization schedule that James Davison provided to Ms. Cooley contains false information, in which Mr. Davison intentionally applied the first monthly payment to the note on the day the loan closed, instead of the following month.

91. Further, the Property does have deferred maintenance issues required, including electrical work that has required Ms. Cooley to incur $1,000 in costs thus far.

92. These false representations were material to the sale of the Property, as they concerned the profitability of the Property as a going concern.

93. James Davison knew that his representations, including those concerning the profitability of the property were false.

94. He owed the Property for at least fifteen years and knew that the profitability information he supplied in negotiation was false, and that the Property had not

achieved the level of profitability he represented. In fact, James Davison later told Ms. Cooley, "I have never made that kind of money."

95. James Davison intended that Ms. Cooley rely on his false misrepresentations and act on them, purchasing the Property from him.

96. Ms. Cooley was unaware that James Davison had made false representations.

97. Ms. Cooley relied on James Davison's representations, including the rent rolls he attached to the Escrow Instructions, which represented the profitability of the Property.

98. Ms. Cooley had a right to rely on Mr. Davison's representations.

99. He owned and managed the Property for at least fifteen years and held himself out to be knowledgeable on all matters concerning the Property and the business of renting the Property to its tenants.

100.    Further, Mr. Davison had previously owned at least six mobile home parks, and Eileen Davison said that she and Mr. Davison managed these parks together, since she was eight years old.

101.    Ms. Cooley has suffered consequent and proximate injury as a result of James Davison's false representations.

102.    James Davison's conduct was outwardly aggravated, outrageous, malicious, or fraudulent conduct intending to injure or defraud, or deliberately interfere with Ms. Cooley's rights, consciously disregarding the unjustifiable substantial risk of significant harm to Ms. Cooley.

/ / / /

/ / / /

/ / / /

/ / / /

**COUNT 2:**

**VIOLATION OF ARIZONA CONSUMER FRAUD ACT A.R.S. § 44-1521, *ET SEQ.***

**(Against Defendants the Trust, Robert Davison, Michael Davison and Eileen Davison, as Co-Trustees of the James E. Davison Revocable Trust Dated March 26, 2003, and Eileen Davison)**

103.     Ms. Cooley incorporates each paragraph of this Complaint into this cause of action.

104.     Defendants used deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of material facts in the sale of the Property to Ms. Cooley. Particularly, Mr. Davison misrepresented the profitability of the Property at the time of the parties' negotiation and transaction, as well as the historical financial performance of the Property.

105.     Eileen Davison substantially assisted or encouraged James Davison in providing this false information. In fact, Eileen Davison stated James Davison was just brilliant in how he designed this transaction.

106.     Mr. Davison intended that Ms. Cooley rely on that deception and fraud in connection with the sale of the Property.

107.     Ms. Cooley did, in fact, rely on that deception and fraud in connection with the sale or advertisement of the Property.

108.     Ms. Cooley has suffered a consequent and proximate injury resulting from Mr. Davison's deception and fraud.

109.     James Davison's conduct was outwardly aggravated, outrageous, malicious, or fraudulent conduct intending to injure or defraud, or deliberately interfere with Ms. Cooley's rights, consciously disregarding the unjustifiable substantial risk of significant harm to Ms. Cooley.

////

16

## COUNT 3: NEGLIGENT MISREPRESENTATION & NON-DISCLOSURE

**(Against Defendants the Trust, Robert Davison, Eileen Davison and Michael Davison as Co-Trustees of the James E. Davison Revocable Trust Dated March 26, 2003, and Eileen Davison)**

110.    Ms. Cooley incorporates each paragraph of this Complaint into this cause of action.

111.    In the course of business, Defendants gave incorrect information for the guidance of Ms. Cooley in their business transaction. Namely, they represented the Property produced $551,400 per year or $45,950.67 per month in income, based on Mr. Davison's and Ms. Davison's numerous years of experience as owners and managers of the Property, the Assets and the Management Business.

112.    In fact, the Property had never achieved that level of profitability.

113.    James Davison represented that Ms. Cooley would receive the Property and the Management Business, a business that held 35 mobile home trailers.

114.    Defendants specifically told Ms. Cooley that none of the assets of the Management Business would be sold from June 2014 and when it would be conveyed to Ms. Cooley. Defendants failed failed to convey ten (10) mobile home trailers, the corresponding promissory notes, or deposits to Ms. Cooley that were identified in the Purchase Contract — specifically, those trailers in spaces 3, 33, 49, 60, 70, 79, 80, 81, 95, and letter O. Thus, Defendants represented that Ms. Cooley was purchasing 35 mobile home trailers as part of the Management Business; however, the Trust only intended to deliver 25 mobile home trailers.

115.    The Management Business that was actually conveyed to Ms. Cooley is worth at least $195,000 less than Mr. Davison represented and stated in the Purchase Contract.

116.     And the value of the Property is worth $220,000 less, based on the income approach to real property valuation. In sum, Mr. Davison's misrepresentations about the Property and Management Business amount to a $415,000 decrease in value to the assets actually received by Ms. Cooley.

117.     Eileen Davison substantially assisted or encouraged James Davison in providing this false information.

118.     James Davison intended, or could reasonably foresee, that Ms. Cooley would rely on that information.

119.     James Davison failed to exercise reasonable care in obtaining or communicating that information.

120. Ms. Cooley relied on that incorrect information, Ms. Cooley's reliance was justified, and Ms. Cooley's reliance was a cause of her damages.

## COUNT 4: BREACH OF CONTRACT

**(Against Eileen Davison, Robert Davison and Michael Davison, as Trustees of the James E. Davison Revocable Trust Dated March 26, 2003, the Trust, Eileen Davison, Robert Davison and Darleen Davison)**

121. Ms. Cooley incorporates each paragraph of this Complaint into this cause of action.

122.  Ms. Cooley and the trust entered into a contract on or about July 24, 2014.

123.  The contract includes, but is not necessarily limited to, documents attached as **Exhibit "A"** and **"Exhibit B**."

124.  The Trust is obligated to convey to Ms. Cooley the Property, the Assets and the Management Business.

125.  The Trust was obligated to give to Ms. Cooley certain rents in connection with the tenants at the Property as of September 1, 2014.

126.  The Trust was obligated to give to Ms. Cooley certain security deposits and all key

18

1   deposits in connection with the tenants on the Property.

2  127. The Trust was obligated to give to Ms. Cooley all of the leases in connection with
3      the tenants at the Property.

5  128. The Trust was obligated to give to Ms. Cooley all of the Assets in connection with
6      the sale of the business.

7  129. The Trust was obligated to give to Ms. Cooley management services in connection
8      with the Property.

9  130. The Trust breached its agreement with Ms. Cooley and did not perform the
10     obligations thereunder.

11  131. The Trust has failed to convey ten (10) mobile home trailers, the corresponding
12     promissory notes, or deposits to Ms. Cooley that were identified in the Purchase
13     Contract — specifically, those trailers in spaces 3, 33, 49, 60, 70, 79, 80, 81, 95, and
14     letter O.

15  132. The Trust has withheld at least $12,000 in rents that are due to Ms. Cooley.

16  133. The Trust has withheld certain security deposits and all key deposits owed to Ms.
17     Cooley.

18  134. The Trust has withheld all current leases owed to Ms. Cooley.

19  135. The Trust has not provided the management services in connection with the Property
20     that agreed to provide.

21  136. Ms. Cooley suffered damages due to the breach of contract and is entitled to recover
22     compensatory damages.

23  137. The Management Business that Mr. Davison actually conveyed to Ms. Cooley is worth
24     at least $195,000 less than Mr. Davison represented and stated in the Purchase
25     Contract.

138. And the value of the Property conveyed to Ms. Cooley is worth $220,000 less, based on the income approach to real property valuation.

139. In sum, Mr. Davison delivered to Ms. Cooley the Property and Management Business worth $415,000 less than agreed in their Purchase Contract.

140. The unintended beneficiaries of the failure to turn over the Property, the Assets and the Management Business are the Trust and its beneficiaries, who include but are not limited to: Robert Davison, Eileen Davison, Darleen Davison and Michael Davison.

141. This action arises out of a contract and as a result and Ms. Cooley is entitled to recover her reasonable attorneys' fees and costs pursuant to A.R.S. § 12-341.01 and A.R.S. § 12-341.

142.

### COUNT 5: BREACH OF GOOD FAITH & FAIR DEALING

**(Against Defendant the Trust, Eileen Davison, Robert Davison and Michael Davison as Co-Trustees of the James E. Davison Revocable Trust Dated March 26, 2003, Eileen Davison, Darleen Davison, Robert Davison and Michael Davison)**

143. Ms. Cooley incorporates each paragraph of this Complaint into this cause of action.

144. James Davison and the Trust owed a duty of good faith and fair dealing to Ms. Cooley.

145. A party to a contract has a duty to act fairly and in good faith. This duty is implied by law and need not be in writing. This duty requires that neither party do anything that prevents the other party from receiving the benefits of their agreement.

146. James Davison and the Trust breached their duty of good faith and fair dealing in the transaction in which they conveyed the Property, Assets and Management Business to Ms. Cooley.

147. Ms. Cooley has suffered damages in an amount to be proven at trial.

### COUNT 6: CONVERSION

**(Against Defendants the Trust, Darleen Davison, Robert Davison and Eileen Davison and Robert Davison, Eileen Davison and Michael Davison as Co-Trustees of the James E. Davison Revocable Trust Dated March 26, 2003)**

148.    Ms. Cooley incorporates each paragraph of this Complaint into this cause of action.

149.    In October 2014, James Davison stole the roof awning inventory after the close of escrow.

150.    This roof awning inventory belonged to Ms. Cooley, and James Davison, through the Trust, intentionally exercised dominion or control that roof awning inventory such that he is justly required to pay its full value to Ms. Cooley, in an amount to be proven at trial.

151.    James Davison's conduct was outwardly aggravated, outrageous, malicious, or fraudulent conduct intending to injure or defraud, or deliberately interfere with Ms. Cooley's rights, consciously disregarding the unjustifiable substantial risk of significant harm to Ms. Cooley.

152.    Eileen Davison misappropriated rents from tenants and distributed them to James Davison and/or the Trust, and those rents were due and owing to Ms. Cooley, not the Trust.

153.    Eileen Davison misappropriated equipment from the Camptown Property after the close of escrow, sold that property and failed and refused to turn it over to Ms. Cooley.  Those assets were the property of Camptwon, not Ms. Davison.

154.    Robert Davison misappropriated equipment, vehicles and other personal property from Camptown. Those assets were the property of Camptown, not the Trust.

155.    Darleen Davison was required to turn over title on several mobile homes and has failed and refused to do so.  Those assets are the property of Camptown, not Mrs.

1   Davison.

2   156.     Any assets that were transferred to the Trust wrongly benefitted the Trust and

3       its beneficiaries.

### COUNT 7: AIDING AND ABETTING

**(Against Defendant Eileen Davison)**

157. Ms. Cooley incorporates each paragraph of this Complaint into this cause of action.

158. James Davison committed torts that caused injury to Ms. Cooley.

159. Eileen Davison knew that James Davison's conduct constituted a breach of duty.

160. Throughout the transaction Eileen Davison told Ms. Cooley that she owned the Property and Management Business and that she had a law degree.

161. Eileen Davison substantially assisted or encouraged James Davison and the Trust in the achievement of the breach. She assisted in providing false representations concerning the profitability of the Property, the Assets and Management Business, including false rent rolls attached to the parties' Purchase Contract.

162. She also assisted in providing false representations concerning the promissory notes of the Property's tenants and the amortization in connection therewith.

163. Eileen Davison's conduct was outwardly aggravated, outrageous, malicious, or fraudulent conduct intending to injure or defraud, or deliberately interfere with Ms. Cooley's rights, consciously disregarding the unjustifiable substantial risk of significant harm to Ms. Cooley.

/ / / /

/ / / /

### COUNT 8: CIVIL CONSPIRACY

**(Against Defendants the Trust, Eileen Davison, Darleen Davison, Robert Davison and Michael Davison)**

22

164. Ms. Cooley incorporates each paragraph of this Complaint into this cause of action.

165. Liability for civil conspiracy requires that two or more individuals agree and thereupon accomplish an underlying tort which the alleged conspirators agreed to commit.

166. Defendants conspired and agreed to commit the underlying torts alleged herein and accomplished those torts, causing damages to Ms. Cooley in an amount to be proven at trial.

167. Defendants' conduct was outwardly aggravated, outrageous, malicious, or fraudulent conduct intending to injure or defraud, or deliberately interfere with Ms. Cooley's rights, consciously disregarding the unjustifiable substantial risk of significant harm to Ms. Cooley.

## DEMAND FOR RELIEF

Accordingly, Plaintiff Gerrie A. Cooley demands that judgment be entered in her favor and against Defendants the Trust, Eileen Davison, Darleen Davison, and James Davison as trustee of the James E. Davison Revocable Trust Dated March 26, 2003 as follows:

1.    For compensatory, consequential, special, and general damages in an amount to be proven at trial of at least $436,000.

2.    For an award of punitive damages.

3.    For rescission of the Purchase Contract and restoration of the parties to the *status quo ante*.

4.    For reasonable attorneys' fees under A.R.S. § 12-341.01 if this matter is contested.

5.    For court costs incurred herein under A.R.S. § 12-341.

6.    For all attorneys' fees and costs in connection with collection of a judgment, with accruing interest at the legal rate.

7.    And for such other and further relief as the Court may deem just and proper.

**RESPECTFULLY SUBMITTED** February 12, 2016.

**PROVIDENT LAW, PLLC**



Christopher J. Charles
Edwin G. Anderson IV
14646 N. Kierland Blvd., Suite 260
Scottsdale, Arizona 85254
*Attorneys for Gerrie A. Cooley*

**VERIFICATION**

1. I, Gerrie A. Cooley, am the Plaintiff in the above-captioned matter.

2. I have read the foregoing Verified Complaint, and I verify that the matters and things stated therein are true to the best of my knowledge, except as to those statements made upon information and belief, and as to those, I believe them to be true.

3. I verify under penalty of perjury that the foregoing is true and correct on February 12, 2016.

By: _____
       Gerrie A. Cooley

25

CERTIFICATE OF SERVICE

I hereby certify that on March 9, _____, 2016, I electronically transmitted the Verified Complaint, using the CM/ECF System for filing to the following CM/ECF Registrants:

Dennis A. Sever
2826 S. Carriage Lane
Suite 100
Mesa, AZ 85202
da.sever@severlaw.net
Attorney for Defendants

David R. Postal
6520 N. 7th Street
Suite #100
Phoenix, AZ 85014
drplegal@msn.com
Co-Counsel for Defendants

/s/ Victoria M. Stevens